UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

NIKE USA, INC.,

    Plaintiffs,

v.

JATIN INC., and
JASBIR S. SIDANA also known as
JAS SIDANA,

    Defendants.

Civ. No. 1:21-cv-5093

## COMPLAINT OF NIKE USA, INC.

Plaintiff Nike USA, Inc. ("Nike") sues Jatin Inc. and Jasbir S. Sidana also known as Jas Sidana (collectively, the "Defendants") for, as set forth below, account stated, breach of contract, breach of personal guaranty, and indemnification. In the alternative, for the causes of action against Jatin Inc., Nike sues Jatin Inc. for unjust enrichment. In support of this Complaint, Nike states as follows:

### I. BACKGROUND FACTS

1. Plaintiff Nike USA, Inc. is an Oregon corporation whose principal business activity is the design, development, and marketing and selling of athletic footwear, apparel, equipment, accessories, and services. Nike USA, Inc. is organized in, domiciled in, and a citizen of Beaverton, Oregon.

2. Jatin, Inc. ("Jatin") was incorporated on or about April 1997 in the District of Columbia.

3. Jatin's current entity status is listed as revoked.

4. According to the District of Columbia's on-line information, Jatin's registered office is located at 3446 Connecticut Ave, N.W., #206, Washington, DC 20008.

5. Defendant Jatin was a retailer of athletic footwear, apparel, and equipment.

6. Jatin sold Nike products in Brooklyn, New York using the name Metro Sneakers.

7. Defendant Jasbir S. Sidana is an individual domiciled in, a citizen of, and residing at 21 Windmere Way, Woodbury, New York 11797-1534.

8. Defendant Jasbir S. Sidana was the President of Jatin.

9. Defendant Jasbir S. Sidana was the owner of Jatin.

10. Jasbir S. Sidana is also known as Jas Sidana.

11. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because Nike is a citizen of a different state than all of the Defendants, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

**A. The Account Agreements**

12. From 1997 through 2019, Nike sold sporting goods, shoes, and apparel to Jatin.

13. Nike and Jatin are parties to the Nike Account Application and Agreement dated January 30, 1997 (the "1997 Account Agreement"). A copy of the 1997 Account Agreement is attached hereto as **Exhibit 1** and is incorporated herein by reference.

14. Nike and Jatin are parties to the Nike Account Application and Agreement dated July 17, 1998 (the "1998 Account Agreement"). A copy of the 1998 Account Agreement is attached hereto as **Exhibit 2** and is incorporated herein by reference.

15. Nike and Jatin are parties to two Nike Account Applications and Agreements that are undated (the "Undated Account Agreements"). Copies of the Undated Account Agreements are attached hereto as **Exhibit 3** and are incorporated herein by reference.

16. Nike and Jatin are parties to the Nike Account Application and Agreement dated April 3, 2002 (the "2002 Account Agreement"). A copy of the 2002 Account Agreement is attached hereto as **Exhibit 4** and is incorporated herein by reference.

17. Nike and Jatin are parties to the Nike Account Application and Agreement dated September 18, 2003 (the "2003 Account Agreement"). A copy of the 2003 Account Agreement is attached hereto as **Exhibit 5** and is incorporated herein by reference.

18. Nike and Jatin are parties to the Nike Account Application and Agreement dated February 26, 2009 (the "2009 Account Agreement," with the 1997, 1998, Undated, 2002, and 2003 Account Agreements, the "Account Agreements"). A copy of the 2009 Account Agreement is attached hereto as **Exhibit 6** and is incorporated herein by reference.

19. In the 2009 Account Agreement, Jasbir Sidana is the signatory for the applicant, Jatin, which is listed as doing business as "Metro Sneakers" located at 547 Fulton Street, Brooklyn, New York 11201.

20. In the intervening years between 1997 and 2019, Nike and Jatin may have entered into additional account agreements with substantially similar terms.

21. The Account Agreements are supported by consideration. In exchange for the execution of the Account Agreements, *inter alia,* Nike agreed to permit Jatin to sell products in authorized retail locations in accordance with the terms and conditions of the Account Agreements.

22. The Account Agreements require Jatin to pay for all goods sold when due, pursuant to invoice terms.

23. The Account Agreements require Jatin to dispute an invoice within thirty days after the date the invoice is due. If Jatin does not dispute invoices within thirty days after the

3

date the invoice is due, then, pursuant to the Account Agreements, the invoice will be deemed accepted and conclusively binding upon Jatin.

24. The Account Agreements state that if Jatin opens or acquires additional retail locations other than the retail locations approved by the Account Agreements, Defendant must submit to Nike a new account application for each additional location.

25. The Account Agreements do not permit Jatin to sell Nike's products to other retailers, on the internet, or at locations not specifically approved by Nike.

26. The Account Agreements condition all orders on Nike's acceptance and permit Nike to refuse or cancel orders at any time.

27. The Account Agreements permit Nike to terminate Jatin's account with Nike at any time in Nike's sole and unfettered discretion.

28. The Account Agreements specifically state that "NIKE WILL NOT BE LIABLE FOR ANY LOSS OF PROFIT, INTERRUPTION OF BUSINESS OR ANY OTHER SPECIAL, CONSEQUENTIAL, OR INCIDENTAL DAMAGES SUFFERED OR SUSTAINED BY APPLICANT. ANY ACTION FOR BREACH OF CONTRACT (OTHER THAN FOR FAILURE TO PAY FOR GOODS DELIVERED, OR FOR FAILURE TO DELIVER GOODS ORDERED AND PAID FOR) MUST BE COMMENCED WITHIN ONE YEAR FROM THE EARLIER OF THE DATE OF DELIVERY OF THE GOODS OR THE DATE OF TERMINATION OF APPLICANT'S ACCOUNT.

29. The Account Agreements provide that Jatin will pay such costs, collection agency fees, expenses, reasonable attorney fees (whether incurred prior to, at trial, or on appeal) incurred by Nike in connection with the collection of any past due sums.

30. The Account Agreements are governed by Oregon law.

31. On April 4, 2019, a Nike field representative visited Jatin's Brooklyn location and observed that the store was no longer operating, and all Nike product had been removed from the location.

**B. The Personal Guaranty**

32. On July 1, 2004, Jasbir S. Sidana (the "Guarantor") provided Nike USA, Inc., its successors, and assigns with the Nike Personal Guaranty (the "Personal Guaranty"). A copy of the Personal Guaranty is attached hereto as **Exhibit 7** and is incorporated herein by reference.

33. In the Personal Guaranty, the Guarantor personally guaranteed the debts of Jatin (also known as "Buyer") to Nike.

34. The Personal Guaranty is absolute, continuing, and unconditional.

35. Paragraph 1 of the Personal Guaranty provides, *inter alia,* that none of the following on one or any number of occasions, will affect Guarantor's liability: (a) any increase or decrease in the amount of credit extended to Buyer, any extension of time for payment, any acceptance of partial payments, or any other modification in the terms of the credit granted to or the relationship with Buyer; (b) any change, amendment, or renegotiation of any term or condition of any agreement between Buyer and Nike; . . . (d) any sale, transfer or other conveyance by Buyer of its assets to any other entity; and (e) any other thing between Nike and Buyer or between Nike and Guarantor, whether or not specified, which may be done or waived.

36. Paragraph 3 of the Personal Guaranty provides that Nike will not be obligated to proceed against Buyer, any other guarantor, or against any collateral before proceeding against Guarantor.

37. In the Personal Guaranty, the Guarantor absolutely and unconditionally guaranteed payment to Nike of all indebtedness of Jatin as the Buyer.

5

38. The Personal Guaranty allows Nike to recover, in addition to the sums owed by Jatin, principal, interest, additional charges and expenses, and attorneys' fees from the Guarantor.

39. The Personal Guaranty is supported by consideration.

40. In exchange for the Guarantor's execution of the Personal Guaranty, *inter alia,* Nike agreed to do business or to continue to do business with Jatin in accordance with the terms and conditions of the Account Agreements.

41. The Personal Guaranty remains in effect until the Guarantor provides written notice by certified mail of the termination of the Personal Guaranty.

42. Termination of the Personal Guaranty does not affect the liability of the Guarantor for any obligations then due or which thereafter become due and payable for merchandise shipped by Nike to the entity in the Personal Guaranty at the time of the termination of the Personal Guaranty.

43. Paragraph 5 of the Personal Guaranty provides that "Guarantor agrees to indemnify NIKE and hold NIKE harmless from all obligations, demands, claims, and liabilities asserted by any other party, and against all losses incurred or paid by NIKE in any way arising out of or in connection with NIKE's transactions with Buyer."

44. Jasbir Sidana personally guaranteed payment to Nike of the debts of Jatin as Buyer.

45. In the Personal Guaranty, the Guarantor acknowledges that Nike will rely on the Personal Guaranty in doing business with and extending credit to Jatin.

46. Nike relied on, *inter alia,* the Personal Guaranty during the course of nearly fifteen (15) subsequent years in making decisions to extend credit and actually extending credit to Jatin.

47. The Guarantor has not terminated the Personal Guaranty.

## II. COUNT I – ACCOUNT STATED

## Nike v. Jatin Inc.

48. Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

49. Nike issued invoices to Jatin for goods and services Nike provided to Jatin, and such invoices were due and payable to Nike more than thirty days prior to the filing of this Complaint.

50. Nike and Jatin have worked to resolve invoice discrepancies, including, but not limited to, chargebacks, freight, and quantity issues. After resolving such issues, the amounts set forth in this Complaint remain due and payable to Nike by Jatin.

51. As of the date of the filing of this Complaint, Jatin is indebted to Nike in an amount no less than $238,563.22, exclusive of interest, fees and costs. A copy of the Account Statement showing the amount Jatin owes to Nike is attached hereto as **Exhibit 8 and is** incorporated herein by reference.

52. The foregoing amount has not been paid to Nike as of the filing of this Complaint, and Jatin has not requested approval to return any product to Nike.

WHEREFORE, Nike requests that judgment be entered in favor of Nike and against Jatin in an amount no less than $238,563.22, plus all of Nike's costs, collection agency fees, expenses, and reasonable attorney fees (whether incurred prior to, at trial, or on appeal) incurred by Nike in connection with Nike's collection efforts.

### III. COUNT II – BREACH OF CONTRACT

Nike v. Jatin Inc.

53. Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

54. Jatin and Nike are parties to the Account Agreements, which require Jatin to pay Nike for goods and services Nike provided to Jatin.

55. The Account Agreements are valid, binding, and enforceable.

56. The Account Agreements are supported by consideration.

57. Nike performed pursuant to the Account Agreements.

58. Nike provided goods and services to Jatin, which was Nike's substantial performance pursuant to the Account Agreements.

59. Nike has invoiced Jatin for the amounts set forth in Count I of this Complaint.

60. Nike has resolved all discrepancies and issues raised by Jatin with respect to each invoice issued to Jatin by Nike.

61. Nonetheless, Jatin has failed to pay Nike for the goods and services Nike has provided to Jatin.

62. Jatin's failure to pay Nike is a breach of the Account Agreements.

63. Jatin's breach of the Account Agreements has caused Nike to suffer damages in an amount no less than $238,563.22 plus all of Nike's costs, collection agency fees, expenses, and reasonable attorney fees (whether incurred prior to, at trial, or on appeal).

WHEREFORE, Nike requests that judgment be entered in favor of Nike and against Jatin in an amount no less than $238,563.22 plus costs, collection agency fees, expenses, and reasonable

attorney fees (whether incurred prior to, at trial, or on appeal) incurred by Nike in connection with Nike's collection efforts.

### IV. COUNT III – BREACH OF PERSONAL GUARANTY

Nike v. Jasbir S. Sidana

64. Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

65. Nike and the Guarantor are parties to the Personal Guaranty.

66. The Personal Guaranty is a valid, binding and enforceable contract.

67. The Personal Guaranty is supported by consideration.

68. The Guarantor personally guaranteed payment of the debts of Jatin to Nike in exchange for Jatin's continued ability to conduct business with Nike and Nike's extension of credit to Jatin.

69. Nike performed pursuant to the Personal Guaranty.

70. Nike provided goods and services to Jatin and extended credit to Defendants, which was Nike's substantial performance pursuant to the Personal Guaranty signed by the Guarantor.

71. The Guarantor failed pay Nike for the goods and services Nike provided—contrary to the Personal Guaranty signed by Guarantor—causing Nike to suffer damages.

72. Because of the Personal Guaranty signed by the Guarantor, the Guarantor is personally obligated to Nike in an amount not less than $238,563.22 plus costs, collection agency fees, expenses, attorney fees and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

WHEREFORE, Nike requests that judgment be entered against the Guarantor in an amount

no less than $238,563.22 plus all of Nike's costs, collection agency fees, expenses, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

## V. COUNT IV – INDEMNIFICATION

Nike v. Jasbir S. Sidana

73. Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

74. The Personal Guaranty requires the Guarantor to indemnify and hold Nike harmless from all obligations, demands, claims, and liabilities asserted against Nike and against all losses incurred or paid by Nike in any way arising out of or in connection with Nike's transactions with Jatin.

75. The Guarantor is required to indemnify Nike for all obligations, demands, claims, and liabilities asserted against Nike and against all losses incurred or paid by Nike in connection with the Complaint and with Nike's transactions with Jatin.

76. The Guarantor has not indemnified Nike for all obligations, demands, claims, and liabilities asserted against Nike and against all losses incurred or paid by Nike in connection with the Complaint and with Nike's transactions with Jatin.

77. Nike has suffered damages not less than $238,563.22 plus all of Nike's costs, collection agency fees, expenses, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal) for Guarantor's failure to indemnify Nike.

WHEREFORE, Nike requests that judgment be entered against Guarantor in an amount no less than $238,563.22, in addition to all losses incurred or paid by Nike in connection with the

Complaint, and all of Nike's costs, collection agency fees, expenses, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

**IN THE ALTERNATIVE**

**XI. COUNT X - UNJUST ENRICHMENT**

Nike v. Jatin Inc.

78. Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

79. At the request of Jatin, Nike conferred a benefit upon Jatin by providing the goods and services described herein and in the exhibits attached hereto.

80. Jatin received and accepted the benefit of said goods and services provided by Nike.

81. At all times material hereto, Jatin was aware that Nike was providing the aforesaid goods and services to Jatin and that Nike expected to be paid for such.

82. At all times material hereto, Jatin, with the aforesaid knowledge, permitted Nike to provide said goods and services and to incur damages.

83. At all times material hereto, Jatin was unjustly enriched by retaining the benefit of receiving said goods and services without paying Nike fair and reasonable compensation.

84. Allowing Jatin to retain the benefit of said goods and services without paying fair compensation would be unjust.

85. By reason of the aforesaid unjust enrichment of Jatin at Nike's expense, an implied contract exists between Nike and Jatin, and Jatin is obligated to pay Nike the *quantum meruit* value of the goods and services described herein and in the exhibits attached hereto.

WHEREFORE, Nike requests that judgment be entered against Jatin in an amount no less than $238,563.22, in addition to all losses incurred or paid by Nike in connection with the Complaint, and all of Nike's costs, collection agency fees, expenses, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

Dated: September 13, 2021

RYAN & CONLON, LLP

*[signature]*

Elizabeth E. Malang, Esq.
2 Wall Street, Suite 710
New York, NY 10005
Phone: (212) 509-6009
Fax: (212) 509-6119
emalang@ryanconlon.com

-and-

A.M. SACCULLO LEGAL, LLC
Anthony M. Saccullo
Mary E. Augustine
A.M. Saccullo Legal, LLC
27 Crimson King Drive
Bear, DE 19701
Phone: (302) 836-8877
Fax: (302) 836-8787
ams@saccullolegal.com
meg@saccullolegal.com

*Attorneys for Nike USA, Inc.*